**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**MICHAEL WILEY,
Appellee,**

**v.**

**PATRICK LEE OLSON,
Appellant.**

---

**CIVIL ACTION NO. 24-2237-JFM**

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

**CASE NO. 22-11556-mdc
ADVERSARY ACTION NO. 22-00058
ORDER ENTERED MAY 10, 2024**

---

**OPENING BRIEF OF APPELLANT, PATRICK  LEE  OLSON**

---

**MARK A. CRONIN
128 Hillside Road
Wayne, PA 19087
(484) 266-0832
philalaw@aol.com
PA Attorney ID# 58240**

**Attorney for Appellant**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….. ii

STATEMENT OF JURISDICTION..................………......……………1

STATEMENT OF ISSUES FOR REVIEW……. ......................................2

STATEMENT OF THE CASE ……………………………………………3

STATEMENT OF FACTS……………………………………………6

SUMMARY OF ARGUMENT…………………………………………11

STANDARD OF APPELLATE REVIEW………………………………..12

ARGUMENT.................................................................................13

A. Whether the bankruptcy court erred as a matter of law in ascertaining that the Premium Payment of $2,426,000.00 contained in the April 6, 2018 Promissory Note from Idea IT Solutions, LLC to McGrath Technical Staffing, Inc. guaranteed by Appellant Patrick Lee Olson should have been determined as punitive damages and thus nondischargeable under the fraud exception to discharge pursuant to 11 U.S.C.§523(a)(2)(A)?

B. Whether the Bankruptcy Court erred as a matter of law in not barring Appellee Michael Wiley's nondischargeable claim—that was listed as a $1.00 asset in his own 2020 Chapter 7 bankruptcy—as barred under the doctrine of judicial estoppel?

CONCLUSION …………………………………………….................24

CERTIFICATIONS……………………………………………………..25

i

APPENDIX --

BANKRUPTCY COURT ORDER OF MAY 10, 2024

BANKRUPTCY COURT OPINION OF MAY 10, 2024

# TABLE OF AUTHORITIES

**CASES:**

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009)……………11

*Andrews v. Michigan Unemployment Ins. Agency*,
891 F.3d 245, 247 (6th Cir. 2018)………………………………………………16

*Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir. 2002) . . . . . . .
13

*Brown v. Felsen,* 442 U.S. 127, 135-137 (1979)…………………………………….17

*Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754, 1760 (2013)

*Cohen v. De La Cruz*, 523 U.S. 213 1998)……………………….…………..passim

*Cohen v. De La Cruz*, 106 F.3d 52 (3d Cir.1997)……………………………passim

*Field v. Mans*, 516 U.S. 59, 69-70 (1995)………………………………………15

*Fleet Consumer Discount Co. v. Graves (In re Graves)*,
156 B.R. 949,954 (E.D. Pa. 1993)………………………………………………… 11

*Grogan v. Garner*, 498 U.S. 279, 287-88 (1991)………………………………15

*In re Auricchio*, 196 B.R. (Bankr. D.N.J. 1996)………………………………17, 18

*In re Fegeley*, 118 F.3d 979, 982 (3d Cir. 1997)…………………………………11

*In re Levy*, 951 F.2d 196, 198-199 (9th Cir. 1991)………………………………..18

*In re Parker*, 250 B.R. 512, 520-521 (M.D. Pa, 2000).  …………………………17

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen Motors Corp.,*
337 F.3d 314, 319 (3d Cir. 2003)……………………...............................................20

*Missouri v. Audley (In re Audley)*, 268 B.R. 279, 285 (Bankr. D. Kan. 2001)16-17

*Lamie v. United States Tr.,* 540 U.S. 526, 534  (2004) . . . . . . . . . . . . . . . . . ...…13

*Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934) . . . . . . . . . . . . . . . . . . . . . . .…13

*Scarano v. Cent. R.R. Co. of New Jersey,*
 203 F.2d 510, 513 (3d Cir. 1953)…………………………………………………19

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
848 F.2d 414, 419-420 (3d Cir. 1988)…………………………………………..20

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
81 F.3d 355, 358 (3d Cir. 1996)…………………………………………………...20

*Texas v. Garner (In re Garner)*, 515 B.R. 643, 650 (Bankr. M.D. Fla. 2014)….17

*Wiley v. Olson (In re Olson)*, Case No. 22-11556-mdc,
Adv. Proc. No. 22-00058, Mem. Op, at 16-17
(Bankr. E.D. Pa. May 10, 2024) (Coleman, B.J.)……………………………passim


**STATUTES AND OTHER AUTHORITIES:**

11 U.S.C § 523(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

11 U.S.C. § 523(a)(4)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..…….…..3, 4

28 U.S.C. § 157(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 158(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..……. . 1

28 U.S.C. § 158(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1334(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**LEGISLATIVE HISTORY**

H.R. Rep. No. 95-595, at 125 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..11

# I.
## STATEMENT OF JURISDICTION

The bankruptcy court had jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), which grants jurisdiction to the district court (referred to the bankruptcy court under 28 U.S.C. § 157(a)) over all proceedings arising under title 11 or arising in a case under title 11.

This was a core proceeding as it arose under title 11 and was within the purview of the bankruptcy court since the adversary proceeding was a determination of dischargeability of debt pursuant to 28 U.S.C. § 157(b)(2)(I). The bankruptcy court issued its final order along with a memorandum opinion on May 10, 2024.

The notice of appeal to this Honorable Court was timely filed on May 24, 2024. The district court has jurisdiction over the appeal from the final order of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

## II.
## <u>STATEMENT OF THE ISSUES FOR REVIEW</u>

**A.**    Whether the bankruptcy court erred as a matter of law in ascertaining that the Premium Payment of $2,426,000.00 contained in the April 6, 2018 Promissory Note from Idea IT Solutions, LLC to McGrath Technical Staffing, Inc. guaranteed by Appellant Patrick Lee Olson should have been determined as punitive damages and thus nondischargeable under the fraud exception to discharge pursuant to 11 U.S.C. §523(a)(2)(A)?

    Suggested Answer: Yes


**B.**    Whether the bankruptcy court erred as a matter of law in not barring Appellee Michael Wiley's nondischargeability claim—that was listed as a $1.00 asset in his own 2020 Chapter 7 bankruptcy—as barred under the doctrine of judicial estoppel?

    Suggested Answer: Yes

2

III.

## STATEMENT OF THE CASE

Appellant Patrick Lee Olson ("**Olson**") filed a petition under Chapter 7 of the Bankruptcy Code on June 15, 2022 with the United States Bankruptcy Court for the Eastern District of Pennsylvania. The bankruptcy case was assigned the case number 22-11556-mdc. Olson received a discharge on February 23, 2023.

On July 5, 2022, Appellee Michael Wiley ("**Wiley**") commenced an adversary proceeding in Olson's bankruptcy case by filing a complaint seeking a determination of nondischargeability of a default judgment of $3,678,122.58 ("Default Judgment") that was entered in the Montgomery Court of Common Pleas on November 19, 2018 based on a Note dated April 6, 2018 setting forth a principal amount of $1,261,000.00. The complaint sought the $3,678,122.58 claim to be nondischargeable on two counts: for actual fraud under 11 U.S.C. § 523(a)(2)(A) and for embezzlement, larceny or breach of fiduciary duty under 11 U.S.C. § 523(a)(4). Olson filed an answer on August 7, 2022 that denied most of the allegations contained in Wiley's nondischargeability complaint.

After discovery, a Trial was held remotely via Zoom before the bankruptcy court on August 9, 2023 whereupon both Wiley and Olson testified and documentary evidence was admitted. On May 10, 2024, the bankruptcy court entered a Memorandum Opinion and final order that resolved the adversary proceeding as follows:

3

1.      $3,003,000.00, the portion of the Default Judgment attributable to the Outstanding CSS Payments of $577,000 and the Premium Payment of $2,426,000.00, is excepted from the Debtor's discharge pursuant to §523(a)(2)(A) of the Bankruptcy Code.

2.      $675,122.58, the balance of the Default Judgment, is not excepted from discharge under either §523(a)(2)(A) or §523(a)(4) of the Bankruptcy Code.

3.      Mr. Wiley's judicial lien on the Property with respect to the Default Judgment is avoided pursuant to §522(f) of the Bankruptcy Code to the extent it exceeds the Judicial Lien Amount of $115,864.95.

*Wiley v. Olson (In re Olson),* Case No. 22-11556-mdc, Adv. Proc. No. 22-00058, ORDER (Bankr. E.D. Pa. May 10, 2024). Appellant Olson filed a timely appeal on May 24, 2024. No cross-appeal was filed by Wiley and, therefore, the dischargeability of the $675,122.58 debt under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4) is not being challenged.

Olson raises two issues in the appeal *sub judice*. First, conceding that the bankruptcy court's determination of the $577,000.00 portion of the default judgment attributed to the CSS Deal is nondischargeable under 11 U.S.C. § 523(a)(2)(A), Olson contends that the treatment of the $2,426,000.00 Premium Payment contained in the April 6, 2018 Promissory Note as punitive damages by the bankruptcy court was in error. The bankruptcy court relied on both the United States Circuit Court of Appeals for the Third Circuit's and the United States Supreme Court's opinions in *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523 U.S. 213 (1998) in awarding approximately $2.4 million

Premium Payment as a form of punitive damages; however, this is in contrast to *Cohen* which allowed an award of treble damages in a landlord-tenant matter based on a New Jersey statute. *Wiley v. Olson (In re Olson),* Case No. 22-11556-mdc, Adv. Proc. No. 22-00058, Mem. Op. at 21-25 (Bankr. E.D. Pa. May 10, 2024). Accordingly, *Cohen* stands for the proposition that punitive damages that are derivatively awarded as part of the underlying fraud are also nondischargeable. *Cohen,* 106 F.3d at 55-59 and *Cohen,* 523 U.S. at 217-223. Here, there is no enabling statute or punitive damage award so the bankruptcy court arbitrarily awarding the Premium Payment of $2,426,000.00 set forth in the April 6, 2018 Note was in error as a matter of law.

The second issue raised on appeal is Olson's defense of judicial estoppel, namely, the inconsistency and inequity of Wiley's 2020 bankruptcy that valued McGrath at $1.00, exempted it for $1.00, then Wiley having McGrath assign the Olson $3.8 million judgment to himself in 2021. The bankruptcy court below rejected the doctrine of judicial estoppel as a bar for Wiley's claim. *Wiley v. Olson (In re Olson),* Case No. 22-11556-mdc, Adv. Proc. No. 22-00058, Mem. Op. at 16-17 (Bankr. E.D. Pa. May 10, 2024).

# IV.
## STATEMENT OF FACTS

This adversary proceeding on appeal involved the following facts which are as follows: Wiley's company, McGrath Technical Staffing, Inc. d/b/a McGrath Systems ("McGrath"), engaged Olson's company Idea IT Solutions, LLC ("Idea Solutions") in 2017 for various information technology projects that included hardware and software. There were three main projects the companies were involved in: the CMG Deal, the Synechron Deal, and the CSS Deal. (N.T. at 18-22, 73-78)

Specifically, McGrath wired Idea Solutions $1,174,000.00 between February 7, 2017 and September 29, 2017 for the three various IT projects; however, only $490,000.00 of that involved the CSS project, namely documented wire transfers on June 9, 2017 for $310,000.00, August 17, 2017  for $105,000.00 and September 29, 2017 for $75,000.00. (N.T. at 22, 78; Plaintiff's Exhibit 1, pp. 20-21). Wiley testified that an additional $87,000.00 was wired on September 29, 2017 though there is no documentary evidence whatsoever supporting that testimony. (N.T. at 22). When the extra $87,000.00 is computed in the CSS Deal (as the bankruptcy court did), the total amount for the CSS Deal totals $577,000.00. The payments from McGrath to Idea Solutions were funded by a line of credit McGrath held with Centric Bank. (N.T. at 24-28).

The CSS project did not exist. (N.T. at 92-93), though all the funds for that project had been forwarded from McGrath to Idea Solutions by September 29, 2017. (N.T. at 22, 78; Plaintiff's Exhibit 1, pp. 20-21). Wiley communicated to Olson that his lender, Centric Bank, who provided all the funding for the projects required a CSS contract for the credit line for the CSS project. (N.T. at 24-28). On September 10, 2018, Olson forged a contract purportedly signed by CSS's Chief Operating Officer and, subsequently, forged an Amended CCS contract to Wiley. (N.T. at 92-97, Plaintiff's Exhibit 2, pp. 22-31).

Roughly six months after the last payment for CSS project and the fraudulent receipt of the $577,000.00 in wired fund, Wiley through his company, McGrath, had Idea Solutions and Olson personally as a guarantor execute a Promissory Note ("Note") on April 6, 2018. (N.T. at 32-36, 100-102, Plaintiff's Exhibit 3, pp. 32-35). The Note was for the principal sum of $1,261,000.00 that was various obligations from the CMG and Syncheron projects rolled over with the outstanding wires from the CSS project. (N.T. at 32-34, 59-60), there was a "Premium Payment" of $2,426,000.00 that represented "the number which was to come from the projects(s)—this needs to be included for my accounting since we already booked these sales in 2017. Those funds will come out of any future projects after splits," as Wiley wrote to Olson in an e-mail dated April 2, 2018." (N.T. at 33; Plaintiff's Exhibit 4, p. 36). Wiley testified at Trial that the Premium

Payment was "what we expected to receive in addition to the capital that we outlaid from the CSS project." (N.T. at 33-34). Olson made one $40,000.00 payment under the Note, but failed to make any subsequent payments under the Note; consequently, a notice of default was sent on July 20, 2018. A complaint was subsequently filed with the Montgomery County Court of Common Pleas on behalf of McGrath Systems on August 6, 2018 against Olson sounding in contract that sought $3,678,122.58 in damages against the Olson and his company based on the April 6, 2018 Note. A default judgment was entered in the Montgomery County Court of Common Pleas on November 19, 2018 for $3,678,122.58. (Plaintiff's Exhibit 6, pp. 39-53).

In 2019, Wiley filed a criminal complaint with the Whitpain Township Police Department for the forgery of the CSS contract. A criminal case was filed against Olson by the District Attorney of Montgomery County where Olson ultimately pleaded guilty of forgery. (N.T. 37-43, 82-85)). A restitution judgment was entered on March 1, 2022, as part of Olson's sentencing, which was in the amount of $1,042,258.87. (Plaintiff's Exhibit 5, p. 37).

Wiley testified that the financial losses caused by the 2017 Deals with the Debtor caused McGrath to enter a "death spiral" that ultimately led it to file for Chapter 11 bankruptcy on August 3, 2020 (N.T. at 47). The proposed Chapter 11 plan which is Plaintiff's Exhibit 8 states that McGrath had gross revenues of

almost $10.5 million in 2017 and over $5.2 million in 2019; moreover, the proposed Chapter 11 plan blamed Olson's fraud of approximately half million dollars for McGrath's Chapter 11 filing rather than the COVID-19 epidemic that certainly impacted labor market. (N.T. at 47, 117; Plaintiff's Exhibit 8, pp. 55-77). In McGrath's bankruptcy, its proposed plan identified assets of approximately $10,813.58 and liabilities of approximately $5.9 million. (Plaintiff's Exhibit 8, pp. 55-77). The judgment against Olson is valued in the liquidation analysis as $0.00. *Id*. The proposed Chapter 11 plan also notes that Centric Bank, its only significant secured creditor, was owed $5,110,942.20. *Id*. McGrath's Chapter 11 case was subsequently voluntarily dismissed in early 2021.

Finally, Wiley and his wife filed a joint Chapter 7 bankruptcy petition in August 7, 2020. Wiley testified that, based on this balance sheet, in his personal bankruptcy he listed the value of his 100% ownership in McGrath as $1.00 in Schedule A/B (N.T. at 46, 110-D-4, p. 5), even though McGrath still held a multimillion dollar judgment against Olson. Wiley also exempted his interest in McGrath in his amended Schedule C for $1.00 (D-4, p. 20). Mr. Wiley and his wife received a discharge in their Chapter 7 case on November 19, 2021. Wiley caused McGrath to assign the default judgment to himself in November 3, 2021. (N.T. at 62-63, Plaintiff's Exhibit 6, p. 54), Apparently, Wiley did not remember what consideration, if any, he gave to his company in exchange for the

$3,678,122.58 judgment. Additionally, when Olson's counsel inquired in whether he followed the corporate formalities with the company, the bankruptcy court sustained Wiley's because it asked for a legal conclusion." (N.T. at 63-64). and he thereafter commenced execution on the judgment after transferring it to Chester County giving him an immediate and substantial lien against Olson's home.

## V.  <u>APPLICABLE STANDARD OF APPELLATE REVIEW</u>

This Honorable Court has jurisdiction over this appeal under 28 U.S.C. §§ 158(a) and 1334.  *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009). This Court conducts a plenary review of the Bankruptcy Court's legal conclusions.  *In re Fegeley*, 118 F.3d 979, 982 (3d Cir. 1997). Therefore, a *de novo* standard applies to questions of law, which require the district court to reach its own legal conclusions "without deferential regard to those made by the bankruptcy court." *Fleet Consumer Discount Co. v. Graves (In re Graves)*, 156 B.R. 949,954 (E.D. Pa. 1993).

## VI.   SUMMARY OF THE ARGUMENT

The Bankruptcy Code provides for the nondischargeability of certain debts incurred by "actual fraud" under section 523(a)(2)(A). The U.S. Supreme Court held in *Cohen v. De La Cruz*, 523 U.S. 213 (1998) that treble damages or punitive damages under a state consumer protection action or as part of a state court fraud judgment may be determined nondischargeable. Appellant Olson asserts in this appeal that the bankruptcy court went where no court has gone before in arbitrarily awarding over four times based on a contractual provision without an enabling statute or a state court award of punitive damages. Appellant seeks reversal of the bankruptcy court's utilization of the Premium Payment of $2,426,000.00 under the Note dated April 2, 2018 as a *de facto* punitive damage award.

Additionally, Appellant raises the defense of judicial estoppel whereupon Appellee Wiley's 2020 Chapter 7 bankruptcy allowed him to value his company for $1.00 and exempt it for $1.00, then have the company assign the judgment to him that ultimately gave him a post-discharge windfall of over $3 million and a judicial lien of $115,864.95 in Appellant Olson's home. Judicial estoppel should preclude any recovery for the Appellee Wiley, except for the judicial lien.

## VII.  <u>ARGUMENT</u>

A principal purpose of chapter 7 bankruptcy is to provide a fresh start for the debtor through the discharge of most debts, "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934). *See also* H.R. Rep. No. 95-595, at 125 (1977).  The Bankruptcy Code contains a limited list of carefully delineated exceptions to the discharge. *Bullock v. BankChampaign, N.A.,* 569 U.S. 267, 275 (2013) ("exceptions to discharge should be confined to those plainly expressed.")

As with other issues of Bankruptcy Code interpretation, the plain language of the statute should determine the interpretation of these exceptions. *Lamie v. United States Trustee,* 540 U.S. 526, 534  (2004) ("when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.") Because of bankruptcy's underlying concern for affording a new beginning, statutory exceptions to discharge are generally construed "narrowly against the creditor and in favor of the debtor." *Boston Univ. v. Mehta (In re Mehta),* 310 F.3d 308, 311 (3d Cir.  2002).

In this adversary proceeding on appeal, Olson contends that the bankruptcy court below improperly applied the principles of statutory text of section

523(a)(2)(A) of the Bankruptcy Code as well as both the Third Circuit and Supreme Court decisions in *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523 U.S. 213 (1998) pertaining to awarding punitive damages. In a nutshell, the bankruptcy court arbitrarily incorporated the Premium Payment amount from the April 6, 2018 Note in connection with the actual fraud under 11 U.S.C. §523(a)(2)(A) though there was no punitive damages awarded by the state court nor an enabling statute like that in *Cohen* which would have justified contractual damages that were punitive in nature.

### A. Whether the bankruptcy court erred as a matter of law in ascertaining that the Premium Payment of $2,426,000.00 contained in the April 6, 2018 Promissory Note from Idea IT Solutions, LLC to McGrath Technical Staffing, Inc. guaranteed by Appellant Patrick Lee Olson should have been determined as punitive damages and thus nondischargeable under the fraud exception to discharge pursuant to 11 U.S.C. §523(a)(2)(A)?

The Bankruptcy Court excepted the $3,003,000.00 portion of Appellee Wiley's default judgment fraud under 11 U.S.C. § 523(a)(2)(A), including $577,000.00 attributed to the outstanding CSS payments as well as the Premium Payment of $2,426,000.00 under the Note dated April 2, 2018. Again, it should be noted that the documentary evidence from McGrath's own business records revealed only $490,000.00 was wired to Olson's company in connection with the CSS Deal. (Plaintiff's Exhibit 1, pp. 20-21). Nonetheless, Olson contends that the

additional $2,426,000.00 contractual Premium Payment under the Note determined by the bankruptcy court as nondischargeable was improper and contrary to section 523(a)(2)(A) of the Bankruptcy Code.

Section 523(a)(2)(A) of the Bankruptcy Code provides an exception to the discharge from any debt:

> (2)    for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—
> (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition.

11 U.S.C. §523(a)(2)(A).

To succeed in an action under 11 U.S.C. § 523(a)(2)(A), the objecting creditor must prove by a preponderance of the evidence, *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991), that: (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the debtor made the representation with intent to deceive; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered loss, which was proximately caused by the debtor's conduct. I*n re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009). These elements mirror those required to prove common law fraud. *See Field v. Mans*, 516 U.S. 59, 69-70 (1995) (stating that the operative terms of 11 U.S.C. § 523(a)(2)(A) "false representations,

false pretenses, or actual fraud" are common law terms which imply elements that the common law has defined them to include).

The bankruptcy court relied on the United States Supreme Court case in *Cohen v. De La Cruz*, 523 U.S. 213 (1998) in adding an additional $2,426,000.00 to the $577,000.00 amount that was the basis of the actual fraud under 11 U.S.C. §523(a)(2)(A). There is absolutely no nexus here between the Premium Payment of $2,426,000.00 contained in the April 6, 2018 Note, and the "actual fraud" amount of $577,000.00. The *Cohen* case involved whether the nondischargabilty provision set forth in section 523(a)(2)(A) of the Bankruptcy Code reached the award of treble damages set forth in the New Jersey Consumer Fraud Act in a landlord-tenant matter to refund excessive rents fraudulently charged to tenants. *Id*. at 215-216. The Supreme Court agreed with the Third Circuit ruling below noting that the treble damages were awarded pursuant to the tenants as a result of the landlord's fraud and pursuant to the New Jersey Fraud Act. *Id*. at 217.

In this case, there is no enabling statute that allowed for treble or punitive damages. Indeed, *Cohen* has been applied in such cases where there has been such a statute. *See, e.g., Andrews v. Michigan Unemployment Ins. Agency*, 891 F.3d 245, 247 (6th Cir. 2018) (fraud for failing to disclose wages to obtain or increase benefits; debtor ordered to pay restitution of $6,897.00 and penalties of $27,588.00); *Missouri v. Audley (In re Audley)*, 268 B.R. 279, 285 (Bankr. D. Kan.

16

2001) (penalties imposed by state based on violations of consumer fraud statute were nondischargeable under 11 U.S.C. §523(a)(2)(A)) ; *cf. Texas v. Garner (In re Garner)*, 515 B.R. 643, 650 (Bankr. M.D. Fla. 2014) (restitution award and penalties awarded against debtor under state consumer protection statute were nondischargeable under 11 U.S.C. § 523(a)(2)(A)). *Cohen*'s progeny certainly does not authorize a bankruptcy court to designate part of debt as *de facto* punitive damages simply because a portion of that debt was incurred fraudulently.

Simply put, there is no authority for the bankruptcy court to utilize the Premium Payment amount from the April 6, 2018 Note and impose punitive damages on its own. In the Montgomery County Court of Common Pleas action, there was no award of punitive damages by a judge or jury attributed to the underlying fraud. McGrath and later Wiley only had a default judgment which has absolutely no preclusive effect in federal court. *See, Brown v. Felsen,* 442 U.S. 127, 135-137 (1979); *In re Parker*, 250 B.R. 512, 520-521 (M.D. Pa, 2000). The bankruptcy court also cited the Third Circuit's *Cohen* decision because it referred to *In re Auricchio*, 196 B.R. (Bankr. D.N.J. 1996) which it cited disapprovingly in connection with other decisions that punitive damages could be dischargeable in fraud adversary proceedings. *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52, 56 (3rd Cir. 1997). The bankruptcy court misread this case as a license that it had the authority to add "lost profits" as punitive damages when, in fact, the Third Circuit

17

referenced *Auricchio* because it had cited Ninth Circuit precedent in *In re Levy*, 951 F.2d 196, 198-199 (9th Cir. 1991) that denied punitive damages. *Compare Auricchio,* 196 B.R. at 289-290 (discussing punitive damages under New Jersey's RICO statute and whether they may be imposed in a section 523(a)(2)(A) fraud action) *with Auricchio,* 196 B.R. at 290-291 (discussing lost profits). Accordingly, the bankruptcy court simply plucked the $2,426,000.00 figure from the Premium Payment contained in the April 6, 2018 Note to add a *de facto* punitive damage award against Olson and in favor of Wiley. There is absolutely no authority or basis for a bankruptcy court to pick out a contractual term and label it punitive damages to purportedly make Wiley whole. As noted above, Centric Bank provided all the funding for the CSS and other deals, and Wiley discharged his debt to Centric but, as discussed below, squirreled the $3.6 million judgment in favor of McGrath and against Olson to himself roughly a year after his 2020 Chapter 7 bankruptcy case concluded. As far as punishing Olson, there is a restitution judgment for $1,042,258.87 in the Montgomery County civil docket arising from the Olson's forgery conviction which was related to the fraud in the CSS Deal. So, Olson has paid his debt to society and has a separate judgment arising from his dealings with McGrath.

Most importantly, the bankruptcy court did find that $577,000.00 of Wiley's debt to Olson is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

This involved the CSS Deal which was fraudulent. But this did not nullify the other work Olson's company did for McGrath, and the bankruptcy court did find that $675,122.58 of the total debt was dischargeable. The April 6, 2018 Note references a principal amount of $1,261,000.00, but the Premium Payment amount should not be deemed a punitive damage clause of the contract as the bankruptcy court did. Accordingly, this Honorable Court should reverse, in part, the Order of bankruptcy court that the $2,426,000.00 Premium Payment is nondischargeable and, rather, determine that the debt is dischargeable, with Olson owing Wiley a nondischargeable debt totaling $577,000.00.

**B. Whether the Bankruptcy Court erred as a matter of law in not barring Appellee Michael Wiley's nondischargeability claim—that was listed as a $1.00 asset in his own 2020 Chapter 7 bankruptcy—as barred under the doctrine of judicial estoppel?**

First articulated by the Third Circuit in 1953, the judge-made doctrine of judicial estoppel polices a litigant's use of the judicial system insofar as "a plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position, may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." *Scarano v. Cent. R.R. Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir. 1953). Consequently, the doctrine's basic principle is that,

absent a sufficient explanation, a party should be prohibited from gaining an advantage by litigating on one theory and then subsequently seeking an additional advantage by pursing an irreconcilably inconsistent theory.  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).

Although seemingly broad, judicial estoppel is not intended to eliminate any slight or inadvertent inconsistency in a litigant's position; rather, it is to be reserved for only the most egregious cases to prevent a party from deliberately "playing fast and loose with the courts."  *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen Motors Corp.,* 337 F.3d 314, 319 (3d Cir. 2003) (quoting Scarano, 203 F.2d at 513).  Still, however, the Court of Appeals has opined that "the fact that a sanction is to be used sparingly does not mean that it is not to be used when appropriate."  *Krystal,* 337 F.3d at 325. Indeed, courts in this Circuit have found it appropriate to apply to doctrine to bar claims brought by litigants who had previously acted in bad faith in concealing those claims during prior bankruptcy proceedings.  *See, e.g., Krystal*, 337 F.3d at 319-25 (applying judicial estoppel to bar debtor plaintiff's claim against defendant creditor for violation of the automatic stay imposed by the Bankruptcy Code because plaintiff knew about the claim during the prior bankruptcy proceeding and had a motive to conceal it in the face of an affirmative duty to disclose).  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419-420 (3d Cir. 1988).

Olson contends that judicial estoppel precludes the recovery of the $3,678,122.58 judgment by Wiley in this adversary proceeding and that the Bankruptcy Court erred in determining $3,003,000.00 of the debt nondischargeable. The bankruptcy court below opined as follows on this judicial estoppel issue:

> As an initial matter, the Court finds that Mr. Wiley is not estopped from pursuing the Nondischargeability Action. The Debtor argues that Mr. Wiley should be estopped from seeking a finding that the Default Judgment is nondischargeable because he cannot benefit from having valued his interest in McGrath at $1.00 in his own bankruptcy schedules, only to then assign and pursue the $3.7 million Default Judgment in McGrath's favor after his case was discharged and McGrath's case voluntarily dismissed. In essence, the Debtor argues it is inconsistent for Mr. Wiley to have asserted in his own bankruptcy case that his interest in McGrath held no value, while now seeking to enforce a $3.7 million judgment that McGrath held at the time he did so.
> The Court disagrees. Mr. Wiley credibly testified, and McGrath's bankruptcy schedules showed, that on a balance sheet basis, McGrath's assets were de minimis, and were stacked against millions of dollars of liabilities. Mr. Wiley also testified that creditors, and specifically Centric, had deemed the Default Judgment uncollectible. The Court therefore finds, in light of the extreme difference in McGrath's assets and liabilities, that Mr. Wiley had legitimate grounds to value his interest in the entity at $1.00 at the time he filed his schedules in his bankruptcy case, and is not estopped from seeking a nondischargeability determination with respect to the Default Judgment. This is the case even if, as he testified, he believes the judgment ultimately is uncollectible. The fact that the Default Judgment may be uncollectible as a practical matter does not preclude Mr. Wiley from asserting that it should not be discharged, and his actions in his own bankruptcy case do not estop him from doing so.

*Wiley v. Olson (In re Olson)*, Case No. 22-11556-mdc, Adv. Proc. No. 22-00058,

Mem. Op, at 16-17 (Bankr. E.D. Pa. May 10, 2024) (Coleman, B.J.). With all due respect to the learned Bankruptcy Judge below, the law holds otherwise and Wiley should be judicially estopped from bringing this nondischargeability action, if for nothing else to uphold the integrity of the bankruptcy process..

The judgment was assigned from McGrath Systems to Wiley for an unknown amount which Wiley undervalued at $1.00 in his Chapter 7 case on his Schedule A/B and exempted for $1.00 on his Schedule C so he could keep that asset is a classic example of where "a party should be prohibited from gaining an advantage by litigating on one theory and then subsequently seeking an additional advantage by pursing an irreconcilably inconsistent theory." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 358 (3d Cir. 1996). *See also Barger v. City of Cartersville, Ga.,* 348 F.3d 1289 *(*11th Cir. 2003).

In this appeal, Olson submits that this is an egregious case of Wiley drastically undervaluing his asset McGrath Systems for $1.00 in his 2020 Chapter 7 case, exempting the entire company for $1.00, and now benefitting individually after assigning the company to himself. Nonetheless, even if this Honorable Court reverses the bankruptcy court and determines the entire debt nondischargeable, Wiley still has a $115,864.95 judicial lien against Olson's residence as part of the bankruptcy court's May 10, 2024 Order. Significantly, privity is not a requirement for judicial estoppel to be applied. *Ryan,* 81 F.3d at 360. After all, judicial estoppel

"is intended to protect the courts rather than litigants." *Fleck v. KDI Syvan Pools, Inc.*, 981 F.2d 107, 121-122 (3d Cir. 1992).

Here, Wiley who filed his Chapter 7 case in 2020—less than two years before Olson's 2022 Chapter 7 case—unfairly profits at the expense of his creditors, especially his primary lender Centric Bank, who financed the fraudulent $577,000.00 payments to Olson. Indeed, the bankruptcy court rewards Wiley's crafty undervaluation by giving him an additional windfall of $2.4 million in contractual damages that it treats as punitive in nature. Accordingly, this Honorable Court should reverse the May 10, 2024 Order of the bankruptcy court based on the doctrine of judicial estoppel and find the entire debt that Olson owes Wiley nondischargeable.

## VIII.  <u>**CONCLUSION**</u>

For all the foregoing reasons, this Honorable Court should reverse the Order of the bankruptcy court and find that Appellee Wiley's claim against Appellant Olson is barred under the doctrine of judicial estoppel. Strictly in the alternative, this Honorable Court should reverse, in part, the Order of bankruptcy court that the $2,426,000.00 Premium Payment is nondischargeable and, rather, determine that the debt is the $2,426,000.00 debt is dischargeable, with Olson owing Wiley a nondischargeable debt totaling $577,000.00.

Respectfully submitted,


Dated: July 22, 2024                    /s/ *Mark A. Cronin*_____
                                        Mark A. Cronin, Esquire
                                        128 Hillside Road
                                        Wayne, PA 19087
                                        (484) 266-0832
                                        philalaw@aol.com
                                        Attorney for Appellant Patrick Lee Olson

**CERTIFICATION OF BAR MEMBERSHIP**

I hereby certify that I am a member of the bar of the United States District Court for the Eastern District of Pennsylvania.

/s/ Mark A. Cronin
**MARK A. CRONIN**

**CERTIFICATE OF COMPLIANCE WITH RULES**

I hereby certify that this brief complies with Fed. R. Bankr. P. 8014 in that it does not exceed 30 pages in length.

This brief complies with the typeface requirements of Fed. R. Bankr. P. 8014 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman type.

I certify that the text of the brief filed electronically is identical to the paper copies filed with the court.

/s/ Mark A. Cronin
**MARK A. CRONIN**

**CERTIFICATION OF SERVICE**

I, MARK A. CRONIN , hereby certify that the foregoing Appellant's opening brief was served, on the date below, by way of the Court's ECF system, upon:

Philip D. Berger, Esquire
BERGER LAW GROUP
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA 19010

/s/ Mark A. Cronin
**MARK A. CRONIN**

DATED: July 22, 2024